IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANTHONY MCCANTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV935 |
| | ) | |
| NURSE BERRINGER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on two motions—a motion to dismiss filed by Defendant Nurse Practitioner Brathwaite (Docket Entry 21) and a separate motion to dismiss filed by Defendants Nurse Berringer, Nurse Supervisor Glick, Unit Manager Thompson, and Sergeant Huneycutt (Docket Entry 28). Plaintiff has responded to the motions and the matter is ripe for disposition. For the reasons that follow, Defendants' motions to dismiss should be granted in part and denied in part.

I.  Background and Plaintiff's Allegations

On October 16, 2017, Plaintiff Anthony McCants, a prisoner of the State of North Carolina, filed this *pro se* action naming the following persons as Defendants individually and in their official capacities: Nurse Berringer, Nurse Supervisor Glick, Nurse Practitioner Brathwaite, Unit Manager Thompson, Sergeant Huneycutt, John Doe Nos. 1-100, and Jane Doe Nos. 1-100. (Compl. ¶¶ 4-10, Docket Entry 2.) The complaint purports to set forth a claim pursuant to 42 U.S.C. § 1983 for a violation of Plaintiff's civil rights, and the factual allegations are in the nature of a claim for deliberate indifference to a serious medical need in

violation of the Eighth Amendment's prohibition against cruel and unusual punishment. (*Id.* ¶ 39, 53-56.) The complaint also mentions, but does not clearly allege, supervisor liability, medical malpractice, and *res ipsa loquitur* negligence claims. (*Id.* ¶ 40-42, 45, 57-59.)

Plaintiff's factual allegations, in their entirety, are as follows[1]:

> On or about 2nd December, 2015, I received a wheelchair from Albemarle Correctional Institution Medical Services due to a bulged disc in my back. On or about 4th December, 2015, I noticed that the left side wheel on the wheelchair was bending and lopsided. I immediately notified Correctional Officer Ms. Livingood about the problem with the wheelchair. On or about 10th December, 2015, I was instructed by Correctional Officer Mr. Humber to take the damaged wheelchair to Medical where I was told that they would call me to examine the damage to the wheelchair which they never did. On or about 11th December, 2015, since I did not hear from medical, I wrote them an information request notifying them of the damage to the wheelchair. On or about 13th December, 2015, I spoke with Nurse Berringer about the damaged wheelchair. She informed me that they did not have any more, and I would still have to use the damaged one. I said what happens if it breaks, and she told me there was nothing she could do, and told me to leave. On or about 15th December, 2015, I spoke to Nurse Practitioner Ms. Brathwaite about the damaged wheelchair. She told me that if there are no others available, then she could not help me. On or about 27th December, 2015, I saw Correctional Officer Livingood about the damaged wheelchair. As I was leaving, the right side leg rest broke off. I looked at her, and said before the rest of this chair breaks and causes me harm, it needs to be replaced. I left the broken piece where it was so that custody could photograph it. Approximately 20 minutes later, I was called to the hallway desk, where I met with Sergeant Huneycutt. He told me to pick-up the broken piece, and never leave anything in his hallway. On 30th December, 2015, I stopped by medical and spoke with Nurse Supervisor Mr. Glick. I told him that on or about 11th December, 2015, I wrote a request to medical about the damaged wheelchair. On or about 27th December, 2015, the leg rest broke off and I stated that I was concerned that the wheelchair was so damaged it was going to cause harm to me.

---

[1] Some spelling, punctuation and grammatical errors have been corrected.

He stated to write another request. On or about 3rd January, 2016, Mr. Justin Simpson was pushing me to school when the entire left rear wheel bent and almost made the wheelchair turn over. I went to see the Unit Manager Mr. Thompson and showed him the damaged wheelchair. He stated that I needed to write a request to medical to get another wheelchair (which I did), and he would call medical to see what could be done. On or about 27th January, 2016, the damaged wheelchair still had not been replaced, so Correctional Officer Livingood instructed me to file an Administrative Remedy which I did. (Grievance No.: 4580-2016-TILRF00169). On or about 28th January, 2016, while going to the dining hall the wheel on the left side of the wheelchair broke off. I fell to the concrete floor and hit my head and knocked unconscious. I woke up at Albemarle Regional Hospital. After examination I had suffered head trauma, neck and lower back injury. On or about 1st February, 2016, I was following up with Central Prison Regional Medical Center for a M.R.I. After the doctor reviewed the M.R.I. I was told that I needed lower back surgery due to the fall from the defective wheelchair. On or about 19th August, 2016, I was taken to Duke Medical Center for surgery where I was admitted for approximately six days. Dr. Michael Joe Robinson was the attending neurosurgeon. On or about 25th August, 2016, I was transferred to Central Prison Regional Medical Center for recovery. While at C.P.R.M.C. I was having trouble walking and was put on a walker. On or about 28th August, 2016, I was transferred back to Albemarle Correctional Institution even though I was still having trouble walking. On or about 30th August, 2016, I still had trouble feeling my left leg and was in pain, so I went to medical. I saw Nurse Practitioner Brathwaite. She told me that she did not know why I could not feel my left leg, but she would request the M.R.I. On or about 20th September, 2016, I went for another M.R.I., which the results to date of the filing has not been shared with me. On or about 14th March, 2017, I was taken to Salisbury Correctional Institution for Physical Therapy for something not related. Ms. Pool asked me why I was in the wheelchair and I told her. She asked why I was not getting therapy for my back and told her I don't know why. She stated that she would request it. On or about April or May, 2017, since my back is still hurting, Ms. Pool ordered me some handicapped equipment to see if it would help with the pain. However, as of the date of this filing, I have not received it. On or about 18th July, 2017, I was transferred to Greene Correctional Institution. On or about 20th August, 2017, I

3

> started therapy for my back with Ms. Tart at Greene Correctional Institution. On or about 8th September, 2017, Ms. Tart stated that I need more therapy for my back, but she had to get approval for additional sessions. To date I have not had additional sessions and am having difficulty with my leg (no feeling) and walking.

(*Id.* ¶¶ 12-34.)

Plaintiff alleges that Defendants Nurse Berringer, Nurse Supervisor Glick, and Nurse Practitioner Brathwaite are legally responsible for the day-to-day operations of Medical Services and the health and welfare of all inmates at Albemarle; Defendant Unit Manager Thompson is legally responsible for the day-to-day operations of his unit at Albemarle; and Defendant Unit Manager Thompson and Sergeant Hunneycutt are legally responsible for the health, safety, and welfare of all inmates at Albemarle. (*Id.* ¶¶ 4-8.) In his prayer for relief, Plaintiff asks for declaratory judgment and compensatory and punitive damages. (*Id.* ¶ 60.)

## II. Standard of Review

Defendants argue that dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons & United Mortg. & Loan Invest.*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not

4

allege enough facts to state a claim to relief that is plausible on its face."). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

*Pro se* complaints are to be liberally construed in assessing sufficiency under the Federal Rules of Civil Procedure. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this liberal construction, "generosity is not fantasy," and the court is not expected to plead a plaintiff's claim for him. *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998).

### III. Discussion

#### A. Deliberate Indifference

Plaintiff purports to bring a claim of deliberate indifference to serious medical needs based on Defendants' alleged failure to replace the defective wheelchair he had been issued. It is well settled that not "every claim by a prisoner that he has not received adequate medical treatment states a [constitutional] violation." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The Eighth Amendment only proscribes acts or omissions by prison officials that are "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Since *Estelle*, courts have developed a two-part test for evaluating Section 1983 claims alleging Eighth

Amendment violations as to medical care: courts first evaluate whether there was evidence of a serious medical need and if so, then consider whether a defendant's response to that need amounted to deliberate indifference. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

In the prison context, a serious medical need exists if (1) a condition has been diagnosed by a physician as mandating treatment or is so obvious that a layperson would recognize the need for medical care; or if (2) a delay in treatment causes a lifelong handicap or permanent loss. In order to prove deliberate indifference, a plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is a subjective standard, focusing on the defendant's conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 837-38; *see also Parish v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). Additionally, the individual defendant must realize his actions were inappropriate as a result of his actual knowledge of risk to the inmate. *Parish*, 372 F.3d at 303. This standard is more than mere negligence, requiring actual knowledge of the individual defendant's own recklessness. *Farmer*, 511 U.S. at 836.

It is well settled that negligence or medical malpractice are not sufficient to establish deliberate indifference. *Estelle*, 429 U.S. at 105-06. An "error of judgment" on the part of prison medical staff, or "'inadvertent failure to provide adequate medical care,' while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under § 1983." *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979) (quoting *Estelle*, 429 U.S. at 105) (abrogated in part, on other grounds, *Neitzke v. Williams*, 490 U.S. 319 (1989)). "The bottom line is that prison officials without medical training are responsible for seeing that prisoners are attended to by medical professionals. They are not responsible for

6

determining the course of treatment or for overruling the opinions of those professionals." *Pulliam v. Super. of Hoke Correct.*, 1:05CV1000, 2007 WL 4180743 (M.D.N.C. Nov. 20, 2007) (unpublished).

Here, Plaintiff alleges that within days of receiving the wheelchair on December 2, 2015, he noticed that the left-side wheel was bending and lopsided and alerted prison officials and medical staff. (Compl. ¶ 12-15.) Between December 13, 2015 and January 27, 2016, Plaintiff expressly complained about the state of the wheelchair and requested a replacement from Nurse Berringer, Nurse Supervisor Glick, Nurse Practitioner Brathwaite, and Unit Manager Thompson. Sergeant Huneycutt allegedly made Plaintiff pick the right leg rest that had broken off on December 27, 2015 up off the floor where it fell. The questions, then, are whether the damaged wheelchair constituted a serious medical need, whether the damaged wheelchair posed a serious risk to Plaintiff, whether Defendants appreciated that risk, and whether they consciously disregarded that risk. At this early stage, the Court finds that Plaintiff has stated facts which, taken as true, compel an answer in the affirmative. *See Roberts v. McDonald*, No. 2:11-CV-0474 MCE DAD, 2013 WL 3283351, at *8 (E.D. Cal. June 27, 2013) (unpublished) (citing *Farmer*, 511 U.S. at 834, 837; *Estelle*, 429 U.S. at 106; *Brown v. Castillo*, No. 1:02–cv–06018–LJO–DLB PC, 2007 WL 3054165 at *15 (E.D.Cal. Oct.19, 2007) (unpublished) ("Repair of a wheelchair is a serious medical need."), *report and recommendation adopted*, 2013 WL 4094389 (E.D. Cal. Aug. 13, 2013) (unpublished) (citations omitted); *Brown v. Castillo*, No. 1:02–cv–06018–LJO–DLB PC, 2007 WL 3054165 at *15 (E.D. Cal. Oct.19, 2007) (denying qualified immunity because "[n]o reasonable officer would believe that

allowing a wheelchair-bound inmate to ride in a wheelchair in need of repair could not have resulted in a substantial risk to inmate health and safety.").

Defendants' arguments to the contrary are unpersuasive. Defendant Brathwaite argues first that Plaintiff's allegations amount to a difference of opinion as to his medical treatment. Second, she contends that because Plaintiff did not allege she had control over ordering wheelchairs or that there were other wheelchairs available for her to provide to Plaintiff, he failed to state facts sufficient to support his claim that Defendant Brathwaite disregarded a serious medical need. (Docket Entry 22 at 9-11.) The Court disagrees. If Plaintiff's claim rested on allegations that he was denied a wheelchair entirely, the Court could consider Plaintiff's claim to be a difference of opinion about the nature of the treatment he received. But where, as here, Plaintiff was issued a wheelchair, there can be no difference of opinion as to whether that wheelchair should have been safe for use. In addition, although Defendant Nurse Practitioner Brathwaite is correct that Plaintiff did not specifically allege that she had direct control over ordering wheelchairs or that there was another available, Plaintiff does allege that Defendant Nurse Practitioner Brathwaite was responsible for day-to-day operations of medical services at Albemarle and for the health and welfare of all inmates at the prison. (Compl. ¶ 6.) This is sufficient for Plaintiff's claim to withstand a motion to dismiss.

Defendants Nurse Berringer, Nurse Supervisor Glick, and Unit Manager Thompson argue that each of their singular interactions with Plaintiff are insufficient to support a claim of deliberate indifference. (Docket Entry 29 at 5.) Second, they contend they did not have actual or constructive knowledge the wheel would fall off and that Plaintiff would suffer injury. (*Id.* at 6.) Finally, they argue that because they told Plaintiff how to resolve his issue, they were

not deliberately indifferent. (*Id.*) These arguments are without merit. The interactions alleged are sufficient to suggest that Defendants knew that there was a structural problem with Plaintiff's wheelchair. And, even if they did not subjectively know that the wheel would fall off, they knew or should have known that a wheelchair in disrepair could pose a risk of serious injury. Finally, although Defendant Glick and Thompson instructed Plaintiff to submit a written request for a new chair, they took no individual action to mitigate the immediate risk that the damaged wheelchair posed to Plaintiff.

Defendant Sergeant Huneycutt contends that Plaintiff has not stated a deliberate indifference claim against him because Plaintiff did not expressly complain to him that anything was wrong with his wheelchair. (*Id.*) However, Plaintiff alleges that when the footrest broke off the chair, Sergeant Huneycutt made him pick it up. According to Plaintiff therefore, Sergeant Huneycutt had actual knowledge that the wheelchair was in disrepair and of damage that itself could have caused injury to Plaintiff.

In sum, Plaintiff has stated facts to support his claim that Defendants were deliberately indifferent to the serious risk that Plaintiff's damaged wheelchair posed to him, and Defendants arguments to the contrary have not persuaded the Court that dismissal is warranted at this time.

### B. Other Claims

In his complaint, Plaintiff states, "this complaint is based *only* on deliberate indifference to the faulty and damaged wheelchair, that staff and the named Defendants knew of the damaged and faulty wheelchair and did nothing about it until the Plaintiff was injured as a result of Defendants' deliberate indifference not to replace the damaged and faulty

wheelchair." (Compl. ¶ 39.) Thus, it does not appear that Plaintiff intended to allege a medical malpractice claim and/or a separate negligence claim. Rather, it appears Plaintiff discusses *res ipsa loquitur* out of a mistaken belief that he must satisfy Rule 9(j) to allege either deliberate indifference or medical malpractice. (*See* Compl. ¶ 45.) Nevertheless, Plaintiff's "legal claims" section includes the following sub-sections entitled "Medical Malpractice Claim," "Res Ipsa Loquitor," and "Supervisory Liability Claim." (*Id.* ¶¶ 40-42, 45, 57-59). Consequently, Defendants address these potential claims in their briefs and the Court will likewise consider these claims.

### 1. Medical Malpractice & Negligence

In North Carolina, a plaintiff alleging medical malpractice must comply with North Carolina Rule of Civil Procedure 9(j) which requires a plaintiff to include in his complaint an assertion that that an expert in the same field reviewed the medical care at issue and is willing to testify that the medical care did not comply with the applicable standard of care. *See* N.C. R. Civ. P. 9(j). Failure to comply with Rule 9(j) is grounds for dismissal. *See Littlepaige v. United States*, 528 Fed. App'x 289, 292 (4th Cir. 2013) (unpublished) (finding in a Federal Tort Claims Act case, "that, where applicable, a Rule 9(j) certification is a mandatory requirement for a plaintiff in a North Carolina medical malpractice action."); *Boula v. United States*, 1:11cv366, 2013 WL 5962935, at *2 (M.D.N.C. Nov. 7, 2013) (unpublished); *Moore v. Pitt Cnty Mem. Hosp.*, 139 F. Supp. 2d 712, 713-14 (E.D.N.C. 2001). The only exception to this rule is where "[t]he pleading alleges facts establishing negligence under the existing common-law doctrine of *res ipsa loquitur*." Rule 9(j)(3).

"[T]he doctrine of res ipsa loquitur . . . permits a fact finder 'to infer negligence from the mere occurrence of the accident itself' based on common knowledge or experience." *Wright v. United States*, 280 F. Supp. 2d 472, 481 (M.D.N.C. 2003) (quoting *Diehl v. Koffer*, 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000)). This doctrine "is 'addressed to those situations where the facts or circumstances accompanying an injury by their very nature raise a presumption of negligence on the part of [the] defendant.'" *Wood v. United States*, 209 F. Supp. 3d 835, 845 (M.D.N.C. 2016) (brackets in original) (quoting *Robinson v. Duke Univ. Health Sys.*, 229 N.C. App. 215, 224, 747 S.E.2d 321, 329 (2013)). "The doctrine of *res ipsa loquitur* applies when (1) direct proof of the cause of an injury is not available, (2) the instrumentality involved in the accident is under the defendant's control, and (3) the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission." *Alston v. Granville Health Sys.*, 221 N.C. App. 416, 419, 727 S.E.2d 877, 879 (2012) (citation omitted); *see also Muhammad v. United States*, No. 5:11-CT-3126-FL, 2012 WL 3957473, at*6 (E.D.N.C. Sept. 10, 2012) (unpublished).

Given in part the complexity and inherent risks of most medical treatments, *see Wright*, 280 F. Supp. 2d at 481, *res ipsa loquitur* "rarely applies in medical malpractice actions," *Wood*, 209 F. Supp. 3d at 845. Instead, it remains reserved for "medical malpractice actions in which the 'common knowledge, experience and sense of laymen qualifies them to conclude that [the relevant] medical injuries are not likely to occur if proper care and skill is used.'" *Wright*, 280 F. Supp. 2d at 482 (quoting *Grigg v. Lester*, 102 N.C. App. 332, 335, 401 S.E.2d 657, 659 (1991)). These situations often include "injuries involving gross negligence, such as surgical

11

instruments left in the patient's body, and injuries obviously remote from the site of a surgery." *Id.* at 481 (citations omitted).

Where *res ipsa loquitur* is inapplicable, simple negligence requires a showing that (1) a defendant owed a duty to plaintiff, (2) defendant failed to exercise proper care in the performance of that duty, and (3) "the breach of that duty was the proximate cause of plaintiff's injury, which a person of ordinary prudence should have foreseen as probable under the conditions as they existed." *Escobar v. United States*, 1997 U.S. App. LEXIS 5198 (4th Cir. 1997)(quoting *Westbrook v. Cobb*, 105 N.C.App. 64, 411 S.E.2d 651, 653 (N.C. 1992)). Gross negligence is "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Yancey v. Lea*, 354 N.C. 48, 52, 550 S.E.2d 155, 157 (2001) (quoting *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988) and citing *Hinson v. Dawson*, 244 N.C. 23, 92 S.E.2d 393 (1956); *Wagoner v. North Carolina R.R. Co.*, 238 N.C. 162, 77 S.E.2d 701 (1953)). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Id.* (citing *Foster v. Hyman*, 197 N.C. 189, 191, 148 S.E. 36, 37-38 (1929)).

Defendants argue, generally, that because *res ipsa loquitur* is inapplicable to this case, any claims based on medical malpractice or negligence would fail. Assuming that Plaintiff has alleged medical malpractice and negligence claims, the Court agrees in part and disagrees in part with Defendants' arguments.

Here, the amended complaint contains no assertions regarding review of any medical records by a medical professional or potential expert witness. It is undisputed that Plaintiff has failed to comply with Rule 9(j)'s pre-filing certification requirements, and his status as a

prisoner does not excuse this failure. *Muhammad*, at *5 n. 2. Thus, the only way Plaintiff could be in compliance with Rule 9(j) and properly assert medical malpractice would be if the complaint establishes negligence under the doctrine of *res ipsa loquitur*.

Defendants argue Plaintiff's claim does not meet the third element of *res ipsa loquitur*. (Docket Entry 22 at 15-16.) They note that the "doctrine may be applied when the matter does not fall within the range of highly scientific and technical knowledge, and a result is shown that is 'grotesquely contrary to all human experience.'" (*Id.* (quoting *Covington v. James*, 214 N.C. 71 (1938).) Defendants therefore argue that because Plaintiff's "injury is not so 'grotesquely contrary to all human experience'," a jury could not infer negligence through common knowledge." (*Id.*) The Court agrees with Defendants that the issues in this case are not highly scientific or technical. *See Horsley v. Halifax Reg'l Med. Ctr.*, Inc., 220 N.C. App. 411, 414, 725 S.E.2d 420, 422 (2012) ("[T]he decision of whether to offer a cane to a patient who has trouble walking is not one that requires specialized skill."). However, that same consideration persuades the Court that although Plaintiff has not made out a claim for medical malpractice, he has stated facts that support a claim of simple and gross negligence without the application of *res ipsa loquitur*. *See Ward v. United States*, No. 5:07-CV-383-BO, 2008 WL 4772189, at *3 (E.D.N.C. Oct. 23, 2008), *aff'd*, 326 F. App'x 143 (4th Cir. 2009) (holding that plaintiff's claims that he was issued a defective wheelchair that caused injury despite his complaints to nurses regarding the defective wheelchair stated a prima facie case for negligence, not medical malpractice.); *Lewis v. Setty*, 130 N.C. App. 606, 608–09, 503 S.E.2d 673, 674 (1998) (citing Angela Holder, Medical Malpractice Law 175 (1975) (actions involving falls from beds or examining tables, equipment failures, or other types of accidents in a

doctor's office differ from medical malpractice actions because they do not involve negligent treatment); *Norris v. Rowan Mem'l Hosp.*, 21 N.C. App. 623, 626–27, 205 S.E.2d 345, 348 (1974) (finding that when nurses did not raise rails of bed or instruct patient to ask for assistance in getting out of bed, patient's action for damages resulting from fall was for ordinary negligence, not medical malpractice).

Here, Plaintiff has alleged that Defendants were responsible for his health, safety, and general welfare. (Compl. ¶¶ 4-8.) In other words, Defendants "owed a duty of reasonable care to protect Plaintiff from reasonably foreseeable harm." *Ward v. United States*, No. 5:07-CV-383-BO, 2008 WL 4772189, at *3 (E.D.N.C. Oct. 23, 2008) (unpublished), *aff'd*, 326 F. App'x 143 (4th Cir. 2009). Plaintiff further alleges Defendants "reckless[ly] and callous[ly]" breached their duty by issuing him a wheelchair that was defective and inadequate and failed to repair or replace it despite Plaintiff's repeated requests. Finally, Plaintiff has stated facts to suggest that that Defendants' "breach was the proximate cause of the injuries he suffered as a result of his fall and that his repeated complaints to nurses [and prison staff] regarding the defective wheelchair made such injuries foreseeable. *Id.* Accordingly, Plaintiff has made a prima facie case for gross negligence.

### 2. Supervisor Liability

Defendants Unit Manager Thompson and Sergeant Huneycutt contend that Plaintiff's claim fails to the extent that it is based on supervisor liability. With this argument, the Court agrees. A supervisor may be liable for the actions of a subordinate if:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and

unreasonable risk" of constitutional injury to citizens like the plaintiff;

(2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and

(3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994). Supervisory liability is not established merely by demonstrating that a subordinate was deliberately indifferent to a plaintiff's medical needs. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990). Furthermore, in medical care claims, supervisory officials may rely upon the judgment of the medical staff to determine the course of treatment. *See id.*

To the extent Plaintiff asserts that Defendants Unit Manager Thompson and Sergeant Huneycutt's liability is premised on the actions of their subordinates, Plaintiff's claim fails. There is nothing in the Complaint that alleges Defendant Unit Manager Thompson or Sergeant Huneycutt had any knowledge of wrongful conduct by subordinates, nor are there factual allegations to support "tacit authorization" on the part of the Defendants. Moreover, the evidence suggests that Defendant Unit Manager Thompson and Sergeant Huneycutt's knowledge stems from their individual interactions with Plaintiff on December 27th, 2015 and January 3, 2016 respectively. (Compl. ¶¶ 18, 20.) Based upon the foregoing, Plaintiff has failed to state a supervisory liability claim against Defendants Unit Manager Thompson and Sergeant Huneycutt.

### C. Qualified Immunity

Finally, Defendants Nurse Berringer, Nurse Supervisor Glick, Unit Manager Thompson, and Sergeant Huneycutt assert that they are entitled to qualified immunity. (Defs.' Mem. Supp. Mot. Dismiss, Docket Entry 29 at 9-10.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from *personal-capacity* liability for civil damages under § 1983[.]" (emphasis added)). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 546-47 (4th Cir. 2010). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009).[2] Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

---

[2] In *Pearson*, the Supreme Court overruled the mandatory two-step sequence adopted in *Saucier v. Katz*, 533 U.S. 194, in analyzing qualified immunity. Thus, after *Pearson*, courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances . . . ." *Pearson*, 555 U.S. at 236.

16

Here, Plaintiff's "claim is one of deliberate indifference to his existing serious medical needs. Such claims were first recognized by the Supreme Court [over four] decades ago." *Weaver v. Clarke*, 45 F.3d 1253, 1256 (8th Cir. 1995) (citing *Estelle*, 429 U.S. 97 (1976); Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993). Thus, because Plaintiff has stated a claim that Defendants violated a clearly established right, the Court must reserve its determination as to Defendants' qualified immunity as to the deliberate indifference claim for a more complete record. At this juncture, Defendants should not be entitled to dismissal of Plaintiff's deliberate indifference claim on qualified immunity grounds.

In contrast, ordinary negligence does not implicate a clearly established constitutional right. Any such claim is therefore barred by qualified immunity as against Defendants Nurse Berringer, Nurse Supervisor Glick, Unit Manager Thompson, and Sergeant Huneycutt in their individual capacities. *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006).[3] Plaintiff's negligence claim should therefore be dismissed as to Defendants Nurse Berringer, Nurse Supervisor Glick, Unit Manager Thompson, and Sergeant Huneycutt in their individual capacities.

## IV. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' motions to dismiss for failure to state a claim (Docket Entries 21, 28) be **GRANTED IN PART** and **DENIED IN PART.**

---

[3] Defendant Brathwaite did not assert a qualified immunity defense.

- As to Plaintiff's §1983 claim predicated on deliberate indifference to a serious medical need in violation of the Eight Amendment's prohibition on cruel and unusual punishment, Defendants' motions should be **DENIED**;

- As to any claim based on medical malpractice, Defendants' motions should be **GRANTED**;

- As to any claim based on simple negligence, Defendants' motions should be **GRANTED** as to Defendants Nurse Berringer, Nurse Supervisor Glick, Unit Manager Thompson, and Sergeant Huneycutt and **DENIED** as to Defendant Brathwaite;

- As to any claim based on supervisor liability, Defendants' motions should be **GRANTED** as to Defendants Unit Manager Thompson and Sergeant Huneycutt.

_____
Joe L. Webster
United States Magistrate Judge

August 8, 2018
Durham, North Carolina