# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANTHONY MCCANTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV935 |
| | ) | |
| NURSE BERRINGER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on Defendant Stephanie Brathwaite's Motion for Summary Judgment (Docket Entry 62) and Defendants Donna Barringer, William Glick, III, and Michael Thompson's Motion for Summary Judgment (Docket Entry 65). For the reasons set herein, the Court recommends that the latter motion be granted and the former be granted in part.

## I. BACKGROUND

Plaintiff, a *pro se* litigant,[1] initiated this action on October 16, 2017 by filing a complaint (Docket Entry 2) against several individuals, including Defendants. Plaintiff's factual allegations contained in his complaint, in their entirety, are as follows:[2]

> On or about 2nd December, 2015, I received a wheelchair from Albemarle Correctional Institution Medical Services due to a bulged disc in my back. On or about 4th December, 2015, I noticed that the left side wheel on the wheelchair was bending

---

[1] At the time that Plaintiff filed suit, he was a prisoner in the custody of the North Carolina Department of Public Safety. (Complaint ¶ 3.) However, he has subsequently been released.

[2] Some spelling, punctuation, and grammatical errors have been corrected.

and lopsided. I immediately notified Correctional Officer Ms. Livingood about the problem with the wheelchair. On or about 10th December, 2015, I was instructed by Correctional Officer Mr. Humber to take the damaged wheelchair to Medical where I was told that they would call me to examine the damage to the wheelchair which they never did. On or about 11th December, 2015, since I did not hear from medical, I wrote them an information request notifying them of the damage to the wheelchair. On or about 13th December, 2015, I spoke with Nurse Berringer about the damaged wheelchair. She informed me that they did not have any more, and I would still have to use the damaged one. I said what happens if it breaks, and she told me there was nothing she could do, and told me to leave. On or about 15th December, 2015, I spoke to Nurse Practitioner Ms. Brathwaite about the damaged wheelchair. She told me that if there are no others available, then she could not help me. On or about 27th December, 2015, I saw Correctional Officer Livingood about the damaged wheelchair. As I was leaving, the right side leg rest broke off. I looked at her, and said before the rest of this chair breaks and causes me harm, it needs to be replaced. I left the broken piece where it was so that custody could photograph it. Approximately 20 minutes later, I was called to the hallway desk, where I met with Sergeant Huneycutt. He told me to pick-up the broken piece, and never leave anything in his hallway. On 30th December, 2015, I stopped by medical and spoke with Nurse Supervisor Mr. Glick.[3] I told him that on or about 11th December, 2015, I wrote a request to medical about the damaged wheelchair. On or about 27th December, 2015, the leg rest broke off and I stated that I was concerned that the wheelchair was so damaged it was going to cause harm to me. He stated to write another request. On or about 3rd January, 2016, Mr. Justin Simpson was pushing me to school when the entire left rear wheel bent and almost made the wheelchair turn over. I went to see the Unit Manager Mr. Thompson and showed him the damaged wheelchair. He stated that I needed to write a request to medical to get another wheelchair (which I did), and he would call medical to see what could be done. On or about 27th January, 2016, the damaged wheelchair still had not been replaced, so Correctional Officer Livingood instructed me to file

---

[3] Defendant Glick's affidavit (Affidavit of William Glick, III, Docket Entry 67-3) suggests that Plaintiff erred in identifying him as a Nurse Supervisor. Defendant Glick states that he was Assistant Superintendent for Programs at Albemarle Correctional Institution and never had supervisory or management roles over medical staff. (*Id.* ¶¶ 3, 9.)

2

an Administrative Remedy which I did. (Grievance No.: 4580-2016-TILRF00169). On or about 28th January, 2016, while going to the dining hall the wheel on the left side of the wheelchair broke off. I fell to the concrete floor and hit my head and knocked unconscious. I woke up at Albemarle Regional Hospital. After examination I had suffered head trauma, neck and lower back injury. On or about 1st February, 2016, I was following up with Central Prison Regional Medical Center for a M.R.I. After the doctor reviewed the M.R.I. I was told that I needed lower back surgery due to the fall from the defective wheelchair. On or about 19th August, 2016, I was taken to Duke Medical Center for surgery where I was admitted for approximately six days. Dr. Michael Joe Robinson was the attending neurosurgeon. On or about 25th August, 2016, I was transferred to Central Prison Regional Medical Center for recovery. While at C.P.R.M.C. I was having trouble walking and was put on a walker. On or about 28th August, 2016, I was transferred back to Albemarle Correctional Institution even though I was still having trouble walking. On or about 30th August, 2016, I still had trouble feeling my left leg and was in pain, so I went to medical. I saw Nurse Practitioner Brathwaite. She told me that she did not know why I could not feel my left leg, but she would request the M.R.I. On or about 20th September, 2016, I went for another M.R.I., which the results to date of the filing has not been shared with me. On or about 14th March, 2017, I was taken to Salisbury Correctional Institution for Physical Therapy for something not related. Ms. Pool asked me why I was in the wheelchair and I told her. She asked why I was not getting therapy for my back and told her I don't know why. She stated that she would request it. On or about April or May, 2017, since my back is still hurting, Ms. Pool ordered me some handicapped equipment to see if it would help with the pain. However, as of the date of this filing, I have not received it. On or about 18th July, 2017, I was transferred to Greene Correctional Institution. On or about 20th August, 2017, I started therapy for my back with Ms. Tart at Greene Correctional Institution. On or about 8th September, 2017, Ms. Tart stated that I need more therapy for my back, but she had to get approval for additional sessions. To date I have not had additional sessions and am having difficulty with my leg (no feeling) and walking.

(*Id.* ¶¶ 12-34.) Subsequently, several Defendants filed motions to dismiss (Docket Entries 21, 28), which were granted in part and denied in part (Docket Entry 44 at 6-7.) As a result of this order, only the following claims by Plaintiff survived: 1) a negligence claim against Defendant Brathwaite; and 2) Eighth Amendment claims against all moving Defendants. (*Id.* at 7.) Upon conclusion of the discovery period, Defendants filed the instant motions for summary judgment. (Docket Entries 62, 65.) After the submission of each motion, Plaintiff was sent a Roseboro letter. (Docket Entries 68, 69.) Plaintiff has not filed a response to either motion.

## II. DISCUSSION

At the outset, the Court notes that, because Plaintiff has failed to file timely responses, Defendants' motions for summary judgment could be granted as a matter of course pursuant to Local Rule 7.3(k). Where a party fails to file a timely response, the motion will be "considered and decided as an uncontested motion, and ordinarily will be granted without further notice." Local Rule 7.3(k); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (Auld, M.J.) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession). Alternatively, the Court recommends that the motion for summary judgment be granted because there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law.

### A. Summary Judgment Standard

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick*

4

*v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir.1997).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Id.* The non-movant's proof must meet the substantive evidentiary standard of proof that would apply at a trial on the

merits. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir.1993), *modified on other grounds*, *Stokes v. Westinghouse Savannah River Co.*, 420, 429–30 (4th Cir. 2000); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1233 n. 7 (4th Cir. 1989).

### B. Defendant Brathwaite's Motion for Summary Judgment

Defendant Brathwaite moves for summary judgment on both the Eighth Amendment and negligence claims against her. (Docket Entry 63 at 11, 18.) She has submitted the following evidence for the Court to consider: over 1,000 pages of Plaintiff's medical documents (Docket Entries 64, 64-1), an affidavit by Defendant Brathwaite (Docket Entry 63-2), and a North Carolina Department of Public Safety (NCDPS) incident report regarding the January 2016 accident in which Plaintiff fell from his wheelchair (Docket Entry 63-4).

This evidence establishes the following facts. Defendant Brathwaite is a family nurse practitioner and treated Plaintiff several times during his incarceration at Albemarle Correctional Institution ("Albemarle"). (Affidavit of Stephanie Brathwaite ¶ 5, Docket Entry 63-2.) Brathwaite first saw Plaintiff on December 2, 2015 for an initial assessment upon his transfer to Albemarle and to discuss a Utilization Review request for Neurontin and a referral to neurosurgery due to pre-existing back pain. (*Id.* ¶ 7; Docket Entry 64-1 at 147-48.) Another nurse saw Plaintiff again on December 15, 2015. (Brathwaite Aff. ¶ 8; Docket Entry 64-1 at 144-45.) During this visit, Plaintiff informed the nurse that he wanted to turn in his wheelchair and be given a cane instead. (*Id.*) On December 18, 2015, Plaintiff saw yet another nurse at the medical clinic and stated that a table fell on him and requested a cane again; he was issued a cane the same day. (Brathwaite Aff. ¶ 9; Docket Entry 64-1 at 140-43.) On January 12, 2016, Defendant Brathwaite documented that Plaintiff had returned his wheelchair and issued

6

another cane. (Brathwaite Aff. ¶ 10; Docket Entry 64-1 at 137-38.) On January 26, 2016, Defendant Brathwaite saw Plaintiff again and the two discussed his ongoing back pain. (Brathwaite Aff. ¶ 11; Docket Entry 64-1 at 132-36.) Plaintiff's wheelchair accident occurred on January 28, 2016. (Docket Entry 63-4 at 1; Docket Entry 64-1 at 124-133.) Prior to the wheelchair accident, Plaintiff never mentioned to Defendant Brathwaite anything about a broken wheelchair and she never refused to provide him a wheelchair. (Brathwaite Aff. ¶ 12.)

Plaintiff brings a claim of deliberate indifference to serious medical needs based on Defendants' alleged failure to replace the defective wheelchair he had been issued. Defendant Brathwaite's motion should be granted with regard to this claim.[4] It is well settled that not "every claim by a prisoner that he has not received adequate medical treatment states a [constitutional] violation." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The Eighth Amendment only proscribes acts or omissions by prison officials that are "sufficiently harmful to evidence

---

[4] The Court herein concludes that all Defendants are entitled to summary judgment regarding the Eighth Amendment claims against them. This leaves Plaintiff's state-law negligence claim against Defendant Brathwaite as the only surviving claim. The Court "may decline" to exercise supplemental jurisdiction over state-law claims when it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right . . . . [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). When contemplating whether the exercise of supplemental jurisdiction under § 1367(c) is appropriate, courts are guided by considerations of "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). When the federal claims which provided the initial basis for federal jurisdiction have been dismissed prior to trial, courts have generally found that the aforementioned factors point toward declining the exercise of supplemental jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Flanagan v. Syngenta Crop Prot., LLC*, No. 1:17CV202, 2017 WL 3328168, at *8 (M.D.N.C. Aug. 3, 2017) (Auld, M.J.). Here, this matter has not proceeded to trial and the Court recommends that summary judgment be granted on all federal-law claims in favor of Defendants. Therefore, the Court should decline to extend supplemental jurisdiction to Plaintiff's state-law negligence claim and dismiss the claim without prejudice.

7

deliberate indifference to serious medical needs." *Id.* at 106. Since *Estelle*, courts have developed a two-part test for evaluating Section 1983 claims alleging Eighth Amendment violations as to medical care: courts first evaluate whether there was evidence of a serious medical need and if so, then consider whether a defendant's response to that need amounted to deliberate indifference. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

In the prison context, "a serious medical need exists if (1) a condition has been diagnosed by a physician as mandating treatment or is so obvious that a layperson would recognize the need for medical care; or if (2) a delay in treatment causes a lifelong handicap or permanent loss." *Simmons v. Surry Cty. Sherriff's Dep't*, No. 1:09CV94, 2010 WL 1418319, at *3 (M.D.N.C. Apr. 2, 2010) (Dixon, M.J.) (citing *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) and *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978)); *see also Iko*, 535 F.3d at 241. In order to prove deliberate indifference, a plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is a subjective standard, focusing on the defendant's conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 837-38; *see also Parish v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). Additionally, the individual defendant must realize his actions were inappropriate as a result of his actual knowledge of risk to the inmate. *Parish*, 372 F.3d at 303. This standard is more than mere negligence, requiring actual knowledge of the individual defendant's own recklessness. *Farmer*, 511 U.S. at 836.

It is well settled that negligence or medical malpractice are not sufficient to establish deliberate indifference. *Estelle*, 429 U.S. at 105-06. An "error of judgment" on the part of

prison medical staff, or " 'inadvertent failure to provide adequate medical care,' while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under § 1983." *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979) (quoting *Estelle*, 429 U.S. at 105) (abrogated in part, on other grounds, *Neitzke v. Williams*, 490 U.S. 319 (1989)).

Defendant Brathwaite argues that Plaintiff's Eighth Amendment claims cannot survive summary judgment because he cannot establish that he had a serious medical need or that Defendant Brathwaite was deliberately indifferent. (Docket Entry 63 at 13-16.) Indeed, the Court agrees that there is no genuine dispute of material fact that Defendant Brathwaite was not deliberately indifferent to Plaintiff's health or safety.[5] According to the undisputed affidavit of Defendant Brathwaite, Plaintiff never informed her that his wheelchair was broken. (Brathwaite Aff. ¶ 12., Docket Entry 63-2) Over the course of Plaintiff's incarceration at Albemarle, Defendant Brathwaite continued to treat Plaintiff for his back pain and other medical issues, order testing, and request equipment, medications, imaging, and referrals to outside providers. (*See, e.g., id.* ¶¶ 10-11; Docket Entry 64 at 11-14, 102-120, 122-128; Docket Entry 64-1 at 147-148.) The evidence does not demonstrate that Defendant Brathwaite was deliberately indifferent to a serious medical need, and the Court thus should

---

[5] While this matter does not turn on Defendant Brathwaite's argument, or the similar argument made by her codefendants, that Plaintiff did not have a serious medical need because he did not need the wheelchair (Docket Entry 63 at 13-14; Docket Entry 66 at 13-14), this argument is beside the point. Several Courts, including this one (*see* Docket Entry 37 at 8; Docket Entry 44), have held that a wheelchair in disrepair constitutes a serious medical need. *See, e.g., Robinson v. Doe*, No. 19-9915 2019 WL 6879665, at *6 (E.D. La. Nov. 25, 2019) ("The failure to repair an inmate's wheelchair does constitute the denial of a serious medical need . . . when the failed function of the wheelchair could lead to injury and the wanton infliction of pain.") (Roby, M.J.), *adopted by*, 2019 WL 6877653 (E.D. La. Dec. 19, 2019) (Guidry, J.). Even if Plaintiff did not actually need a wheelchair for his medical conditions, the fact is he was issued one. Upon such issuance, his possession of a wheelchair in such disrepair that it could lead to injury constitutes a serious medical need.

9

grant Defendant Brathwaite's motion for summary judgment (Docket Entry 62) with regard to Plaintiff's Eighth Amendment claim.[6]

### C. Defendants Barringer, Glick, and Thompson's Motion for Summary Judgment

Defendants Barringer, Glick, and Thompson also move for summary judgment on the Eighth Amendment deliberate indifference claims brought against them. (Docket Entry 65.) Defendants Barringer, Glick, and Thompson have each filed an affidavit along with their motion. (Affidavit of Donna Barringer, Docket Entry 67-1; Affidavit of Michael Thompson, Docket Entry 67-2; Affidavit of William Glick, III, Docket Entry 67-3.) They have also filed affidavits by Paula Barrier (Affidavit of Paula Barrier, Docket Entry 67-4) and Jeffrey Hurley (Affidavit of Jeffrey Hurley, Docket Entry 67-5); the former is a nurse who has been employed at Albemarle since 2014 (Barrier Aff. ¶ 4), and the latter is a former correctional officer who was near Plaintiff when the wheelchair accident occurred (Hurley Aff. ¶ 3).

This evidence establishes the following facts. In December 2015 and January 2016, Defendant Barringer was employed as the Nurse Supervisor of Albemarle. (Barringer Aff. ¶ 5.) In January 2016, Defendant Thompson was a Correctional Unit Manager II at Albemarle

---

[6] Defendant Brathwaite also claims that she is entitled to summary judgment on the Eighth Amendment claim brought against her in her individual capacity because she is entitled to qualified immunity. (Docket Entry 63 at 16.) "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because Plaintiff cannot establish that his Eighth Amendment rights were violated, Defendant Brathwaite is entitled to qualified immunity on this claim. She is also entitled to sovereign immunity for the Eighth Amendment claim brought against her in her official capacity. *See Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (noting that the Eleventh Amendment bars suits in federal courts for money damages against nonconsenting states and that this immunity extends to state officers acting in their official capacity.)

and was assigned to the unit where Plaintiff was housed. (Thompson Aff. ¶ 3.) At the same time, Defendant Glick was the Assistant Superintendent for Programs at Albemarle. (Glick Aff. ¶ 3.)

Defendant Glick had no knowledge of "a particular issue" with Plaintiff's wheelchair. (*Id.* ¶ 5.) He is not trained in the prescription or repair of wheelchairs (or other medical equipment), had no role in evaluating whether an inmate should receive a different wheelchair (or piece of medical equipment), had no role in the repair or replacement of wheelchairs (or other medical equipment) beyond directing inmates to communicate with the medical clinic, and did not supervise anyone whose job included evaluating whether an inmate should receive a different wheelchair. (*Id.* ¶¶ 6, 7, 8, 10.)

In or around January 2016, Plaintiff spoke to Defendant Thompson and informed him of an issue with his wheelchair. (Thompson Aff. ¶ 4.) However, Plaintiff did not inform Defendant Thompson of a particular issue. (*Id.* ¶ 5.) Defendant Thompson directed Plaintiff to go to the medical clinic and called the clinic to let them know that Plaintiff had an issue with his wheelchair. (*Id.* ¶ 4.) Defendant Thompson did not speak to Plaintiff again about his wheelchair between this conversation and Plaintiff's wheelchair accident. (*Id.* ¶ 7.) Defendant Thompson is not trained in the prescription or repair of wheelchairs (or other medical equipment), had no role in evaluating whether an inmate should receive a different wheelchair (or piece of medical equipment), had no role in the repair or replacement of wheelchairs (or other medical equipment) beyond directing inmates to communicate with the medical clinic, and did not supervise anyone whose job included evaluating whether an inmate should receive a different wheelchair. (*Id.* ¶¶ 6, 8, 9, 11.)

Defendant Barringer spoke at some point to Defendant Thompson about Plaintiff's need for a wheelchair and told him that Plaintiff should come to the medical clinic for an evaluation. (Barringer Aff. ¶¶ 8, 13.) However, she does not recall ever speaking directly with Plaintiff about a wheelchair and speculates that, if Plaintiff did go to the medical clinic as directed, he was seen by another nurse. (*Id.* ¶ 8.) Between the time of her conversation with Defendant Thompson and Plaintiff's wheelchair accident, Defendant Barringer never spoke to Plaintiff about his wheelchair and he never communicated with her that still needed repairs or replacement. (*Id.* ¶ 10.)

Plaintiff's Eighth Amendment claims against Defendants, Barringer, Glick, and Thompson cannot survive because these Defendants have established that none of them were deliberately indifferent towards Plaintiff's need for a functioning wheelchair.[7] Defendants Thompson and Glick simply have no role in the evaluation, repair, or replacement of medical equipment other than to direct inmates to the medical clinic. (Thompson Aff. ¶¶ 6, 8-9, 11; Glick Aff. ¶¶ 6-8, 9.) Defendant Thompson further states that he did in fact direct Plaintiff to communicate with the medical clinic when Plaintiff approached him about repairs needed for his wheelchair in or about January 2016. (Thompson Aff. ¶ 4.) While Defendant Glick does not recall Plaintiff approaching him to speak about a faulty wheelchair (Glick Aff. ¶ 4), Plaintiff's complaint provides that Defendant Glick did indeed inform Plaintiff to request a resolution from the medical clinic (Complaint ¶ 19). Defendants Thompson and Glick thus acted appropriately given their role and were not deliberately indifferent.

---

[7] Like Defendant Brathwaite, Defendants Barringer, Glick, and Thompson are also entitled to qualified immunity because Plaintiff cannot establish that they violated his Eighth Amendment rights.

Defendant Barringer, in her uncontested affidavit, states that she spoke with Defendant Thompson at an unspecified date about Plaintiff's need for a new wheelchair and advised Defendant Thompson to direct Plaintiff to the medical clinic. (Barringer Aff. ¶ 8.) However, she does not recall personally speaking to Plaintiff about the wheelchair at the medical clinic and denies ever speaking with Plaintiff between her conversation with Defendant Thompson and Plaintiff's wheelchair accident. (*Id.* ¶¶ 8, 10.) A strict reading of Defendant Barringer's affidavit does not preclude Plaintiff speaking to her *before* her conversation with Defendant Thompson. However, medical documents attached by Defendant Barringer to her affidavit show that Plaintiff spoke to a different healthcare provider at the clinic on December 15, 2015 (two days after his Complaint states he spoke to Defendant Barringer about the wheelchair), requested a wooden cane, and denied wanting or needing a wheelchair. (Ex. A. to Barringer Aff., Docket Entry 67-1 at 9-12.) Furthermore, Plaintiff's medical records show that Plaintiff was seen multiple times by medical staff in December 2015 but do not document any interaction between Plaintiff and Defendant Barringer, as Plaintiff alleges occurred on or about December 13, 2015. (*See, e.g.,* Docket Entry 64-1 at 138-149; *see also* Complaint ¶ 16.) Because Plaintiff did not speak to Defendant Barringer at the relevant time regarding his wheelchair, and because Defendant Barringer instructed Defendant Thompson to direct Plaintiff to go to the medical clinic to discuss Plaintiff's faulty wheelchair, Defendant Barringer did not act with deliberate indifference. Summary judgment should be granted in favor of her and Defendants Glick and Thompson.

## III. CONCLUSION

**IT IS HEREBY RECOMMENDED** that Defendant Stephanie Brathwaite's Motion for Summary Judgment (Docket Entry 62) be **GRANTED** in part with respect to Plaintiff's Eighth Amendment claims.

**IT IS FURTHER RECOMMENDED** that Plaintiff's state-law negligence claim against Defendant Stephanie Brathwaite be dismissed without prejudice pursuant to the Court's exercise of its discretion under 28 U.S.C. § 1367(c)(3).

**IT IS FURTHER RECOMMENDED** that Defendants Donna Barringer, William Glick, III, and Michael Thompson's Motion for Summary Judgment (Docket Entry 65) be **GRANTED**.

_____
Joe L. Webster
United States Magistrate Judge

August 10, 2020
Durham, North Carolina